# GRIFFIN *v.* SWENSON.

## SAME *v.* SAME.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; DILIGENCE.

1. The burden is on the junior applicant claiming to be the first to conceive an invention in an interference case where neither party actually reduced his invention to practice before filing his application, to show that he was in the exercise of reasonable diligence when his rival entered the field and down to the time of his, the junior applicant's, own application for a patent.
2. While circumstances such as poverty, debt, sickness, etc., tend to excuse delay in making an application for a patent, they will not justify indefinite postponement of action for a period of years; and failure by an applicant for upwards of two years before the filing of his rival's application to take any positive action will suffice to deprive him of the benefit which he would otherwise have been entitled to by reason of prior conception.
3. What is due diligence or excusable delay on the part of inventors can not, in the absence of statutory limitation, be measured by any arbitrary standard, but must be determined in each case by its own circumstances.

Patent Appeals. Nos. 116 and 117. Submitted May 9, 1899. Decided June 6, 1899.

HEARING on appeals from two decisions of the Commissioner of Patents in interference proceedings. One decision *affirmed* and the other *reversed*.

The facts are sufficiently stated in the opinion.

*Mr. J. J. Darlington* and *Mr. E. G. Siggers* for the appellant.

*Mr. Frank H. Dyer* and *Mr. Leonard H. Dyer* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

These are companion appeals from companion decisions

of the Commissioner of Patents in two cases of interference respecting cognate inventions.

In cause No. 116 the issue comprises two claims which are stated in the following terms:

" 1. In a cotton-compress, three compressing-rolls having their axes substantially in line with each other, mechanism for operating said rolls to provide for the formation of a bale alternately between the intermediate roll and each of the other two rolls, and a core-rod supported at each side of said intermediate roll.

"2. In a rotary cotton-press, the combination of a stationary compression-roll, compression-rolls movable toward and from said stationary roll, movably-supported baling-spools arranged, one between the stationary roll and each movable roll, means to hold the movable rolls yieldingly in contact with their respective baling-spools or the bale formed thereon, and means to rotate said compression-rolls, substantially as described."

And in cause No. 117 the issue, which comprises only one claim, is as follows:

" The combination with a single bat-forming apparatus of two sets of rotary cotton-pressing appliances, and means for feeding the bat to either one of said appliances and for shifting the feed from either one to the other, whereby the process of forming a bale in either one may go on while a previously-finished bale is being removed from the other."

As is apparent, both inventions have reference to the same subject-matter, the process of baling cotton; and the issue of interference cause No. 117 seems to express a generic or broad claim, while the claims of cause No. 116 are more narrow and specific.

The claims of cause No. 116 were first stated in the Patent Office, so far as the record before us discloses, in an application for a patent therefor filed on April 11, 1895, by the appellee, Magnus Swenson, and the claim of cause No. 117 was made the basis of another application filed by the same

appellee on October 14, 1895.   He claims to have conceived
both inventions in February of 1895 ; to have made com-
plete working drawings of the subject-matter of his claims in
the first application on or about April 13, 1895 ; and to have
made complete working drawings of the subject-matter of the
claim of the second application about October 10, 1895.   He
admits that he never made any model of the claims of the
first application, and that he never embodied the inventions
there claimed in any working machine.   But he alleges
that, about the time of his second application, or shortly
thereafter, he embodied the claim of this second invention
in a full-sized working machine which was exhibited at
Atlanta, in the State of Georgia, during the months of
November and December of 1895.

The appellant, Thomas J. Griffin, did not file his appli-
cation in the Patent Office until January 14, 1896.   His
application then filed included all three of the claims in
controversy ; and his preliminary statements, filed in pur-
suance of the several declarations of interference, alleged
conception by him of both inventions in September of 1890,
the completion of a model by him in January of 1891, which
was afterwards accidentally destroyed, and disclosure by
him in July of 1891.   He had made, at the time of the
application, no full-sized machine embodying the invention
or any of the claims now in issue; but he had executed a
new model, and at the time when his preliminary state-
ments were filed, he had a full-sized machine in course of
construction, which was soon afterwards finished and put
into actual operation.

It appears, therefore, that there was no actual reduction
to practice by either party before application to the Patent
Office, and all the tribunals of the Patent Office have so
found.   But the appellee, Swenson, being the first to file
his application in both cases, is entitled to the benefit
of the first constructive reduction to practice.   And the
burden, therefore, was upon the appellant, as the junior

applicant, but claiming to be the first to conceive the invention, to show that he was in the exercise of due diligence when his rival entered the field and down to the time of his own application to the Patent Office. This is the principal and perhaps the only question in the case; and upon this question all the tribunals of the Patent Office, while finding that Griffin was undoubtedly the first to conceive the invention, awarded judgment of priority to his rival, Swenson.

From the decision of the Commissioner to that effect Griffin has prosecuted the present appeals.

With reference to the claims involved in cause No. 116, we find no good or sufficient reason to come to a conclusion different from that reached by the tribunals of the Patent Office. It appears to be quite certain that the appellant conceived the invention stated in these claims as early as the year 1890, and made disclosure of it in the same or the following year, thereby anticipating the appellee by upwards of four years. It also appears quite satisfactorily that, in the years from 1890 to 1895, he had to struggle with many troubles and difficulties, poverty, debt, sickness, the death of his wife and sickness of some children, and various domestic sorrows. But while circumstances of this kind tend to excuse delay, they will not justify indefinite postponement of action for a period of years. For to allow them to have that effect would be in many cases to close entirely the field of invention against competition and to nullify the purposes of the law. The appellant, however, notwithstanding his difficulties, did succeed, in the year 1891 or 1892, in procuring one Joel Wolff, a competent and capable man, to co-operate with him in exploiting and testing his invention, and procuring a patent for it. But Wolff died in July of 1894, without having accomplished anything, and without having taken any steps whatever, so far as the record shows, towards the object in view beyond the mere determination to go to Connecticut at some time and have the invention

tested there.   Wolff was evidently a cautious and prudent man; but his undeveloped intentions, unaccompanied by any action, cannot be held to be due diligence on the part of the appellant.

Then, when Wolff died, in July of 1894, the inaction continued and was permitted to continue without change, and without effort of any kind on the part of the appellant, until September of 1895.   It is true that during six weeks of that time—that is, in the early part of 1895—he was sick and out of work; and that in the employment which he subsequently procured, it was his purpose, as he stated, so to ingratiate himself with his employers as to procure their subsequent assistance in the promotion of his invention. But this, while laudable enough in itself, could not be allowed to have the effect of barring out other inventors and preventing them from responding to the demand of the public for the required improvement.   In fact, it was during this long-continued period of total inaction on the part of the appellant that the appellee entered the field of invention, and promptly made his application to the Patent Office on April 11, 1895; and the inaction of the appellant was continued for several months thereafter.

Under these circumstances we can see no reason why the well-established rule should not be applied, that to him who first reduces an invention to practice, even though the reduction to practice be merely constructive by the filing of an allowable application for a patent, belongs the right of priority of invention, as against one prior to conceive, but who has failed to follow up his conception with reasonable diligence.

It is true, as argued on behalf of the appellant, that there is some diversity of opinion between the tribunals of the Patent Office in regard to the time and circumstances within which the want of due diligence on the part of the appellant is to be located; and that one of the tribunals is plainly in error in that regard.   But without entering into the

details of the testimony, the fact remains that there is no proof of any positive action whatever by the appellant for upwards of two years before the date of the filing of the appellee's application; and this suffices to deprive him of the benefit to which otherwise he would have been entitled under his prior conception.

Nor is it any objection to this conclusion that since the filing of his application the appellee has not sought in any manner to reduce the invention to actual practice or to put it into use. Even if it should be his purpose to withhold the invention from practical use, as is argued on behalf of the appellant, that is not a consideration that can have any force in the present connection, however reprehensible the purpose may be.

We are of opinion that there was no error in the decision of the Commissioner of Patents awarding judgment of priority to the appellee, Swenson, in the matter of the issue involved in cause No. 116.

With reference to the issue involved in cause No. 117 a somewhat different condition of things is presented. It does not follow, in our opinion, that the judgment in this case must necessarily be governed by the decision in cause No. 116.

In cause No. 117 the appellee, Swenson, filed his application for a patent on October 14, 1895; and we fail to find in the record any sufficient or satisfactory proof of his conception of the invention at any time before the date of that application, or at all events, before the petition was sworn to before a notary public on October 5, 1895. It is true, that he testifies to such conception and to disclosure of the invention in the preceding February or March; but we do not find sufficient corroboration of his testimony, and there is strong negative evidence to the contrary. There would seem to have been no reason why it should not have been included in the first application, if he had the conception at that time, as he claims to have had. We must therefore

regard October 5, 1895, as the earliest date of conception that can be allowed to the appellee for the matter contained in the claim of cause No. 117.

Now that the appellant had the same conception since 1890 or 1891 can scarcely be doubted upon the record before us. The question then arises, whether he was in the exercise of due diligence on and before October 6, 1895, when the appellee must be held to have entered upon the field of invention, so far as the claim of this cause is concerned.

In September of 1895 the condition of the appellant was changed. He had put an end to his period of inactivity, and had renewed his efforts to promote his invention. He entered into an arrangement with one Reidel, and through Reidel with a banking firm in Galveston, Tex., his place of residence, for financial aid to test his invention and to procure a patent therefor. He was at the time, and continued to be for several months thereafter, a traveling salesman for a company known as the Rembert Lint Cleaner Cotton Manufacturing Company; and it was his business to travel through the State of Texas and to sell and locate the machines of that company. He was compelled to be away from his place of residence much of the time, and had no great opportunity to consult with those who had agreed to extend financial assistance to him; and during one month of the time he was detained at the bedside of a sick wife; for it seems that he had married the second time. And yet during these months from September, 1895, to January, 1896, he proceeded to have drawings of his invention made by a draftsman, to make a model of it himself, substantially a reproduction of a model destroyed in 1892 or 1893, and to have everything in readiness for his visit to Washington in January of 1896, when he consulted patent solicitors and made his application for a patent, as already stated, on January 14, 1896. This was the culmination of his arrangement of the preceding September with Reidel. We

cannot think that he was wanting in due diligence during this period; and if he was not so wanting, he was entitled to the benefit of his prior conception as against any person who entered the field of invention during its continuance, as did the appellee, Swenson, with reference to the present issue. For plainly we cannot attach importance to the machines previously exhibited by Swenson at Atlanta, since no machine involving the present issue was constructed, or sought to be constructed, by him before the date of his application for a patent (October 14, 1895).

We have heretofore had occasion to remark that the law encourages such delay as is required to test the thoroughness and utility of supposed inventions, and to prevent the Patent Office from being overloaded with applications for patents for crude and incomplete devices. *Yates* v. *Huson*, 8 App. D. C. 93. And we have also said that the law fosters diligence for the reason that an inventor is always bound to anticipate that a rival may appear upon the field at any time. *Platt* v. *Shipley*, 11 App. D. C. 576. But neither the delay that is proper in the one case, nor the diligence that is due in the other, can, in the absence of any statutory limitation of time in this regard, be measured by any arbitrary standard. It has been repeatedly held that the question of due diligence is one to be determined in each case by its own circumstances. *Bradford* v. *Corbin*, 6 O. G. 223; *Hunter* v. *Miller*, 50 O. G. 1765; *McCormick Harvesting Machine Company* v. *Minneapolis Harvester Works*, 51 O. G. 1130. And while less harm is done and the policy of law better promoted by a rigid insistence upon the requirement of diligence than by laxity in the encouragement of delay, it does not seem that the rule of diligence should be pushed to a harsh and unreasonable extent. A shorter delay even than one of four months, if consumed in inaction, might suffice to sustain a charge of laches; but a period of four months expended in reasonable activity—and what the law requires is reasonable, not extraordinary, activity-

is not an unusual time to expend in preparation for an application to the Patent Office. Although there is no question here as to a race of diligence between the parties, the appellee himself waited for eight months without any apparent cause before filing his application, if we are to regard as correct the statement that he conceived and disclosed the invention in question as early as February, 1895. For one placed in the position of the appellant we can not consider that any laches are to be attributed to him for his course between September, 1895, and the date of his application for a patent. We think that the tribunals of the Patent Office were led into error by commingling, and practically confounding, the two causes, and charging the appellant in both cases with the delays which it was proper to charge to him only in one of the cases.

For the reasons assigned we think that the Commissioner's decision in cause No. 116 should be *affirmed*, and that judgment of priority of invention in that cause should be awarded to the appellee, Magnus Swenson; but that the decision in cause No. 117 should be *reversed*, and judgment of priority of invention there awarded to the appellant, Thomas J. Griffin.

The clerk of the court will certify this opinion and the proceedings in the two causes in this court to the Commissioner according to law.